UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DIANA A. KNOX and PHILIP L. KNOX, JR.,

                               Plaintiffs,                           **REPORT &**
                                                   **RECOMMENDATION**

         -against-                                 CV 13-3789 (JFB) (SIL)

COUNTRYWIDE BANK, BANK OF AMERICA,
N.A., their Successors and Assigns, OCWENS
LOAN SERVICING LLC, their Successors and
Assigns, FEDERAL NATIONAL MORTGAGE
ASSOCIATION, MERSCORP HOLDINGS, INC.,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., Any and all individual(s)/
business(es) unknown to Plaintiff(s) and having an
adverse claim of an estate or interest in real
property of Plaintiff(s),

                              Defendants.
-------------------------------------------------------------X

**LOCKE, Magistrate Judge:**

       Plaintiffs *pro se* Diana A. Knox and Philip L. Knox, Jr. (collectively "Plaintiffs") own a

residential property located at 79 14th Avenue, Sea Cliff, New York ("the Property").  This

litigation concerns Plaintiffs' title to the Property in light of various loans and mortgage

agreements that they entered into with Defendant Countrywide Bank ("Countrywide").  Plaintiffs

commenced this diversity action against multiple Defendants in addition to Countrywide:  Bank

of America N.A. ("BANA"), Countrywide's successor in interest;  Ocwens Loan Servicing LLC

("Ocwen"); Federal National Mortgage Association ("Fannie Mae"); and MERSCORP Holdings,

Inc. and Mortgage Electronic Registration Systems, Inc. (together "MERS"), asserting a variety

of claims.

       After prior motion practice, the sole remaining claim is for a declaratory judgment

pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") Article 15, N.Y.

REAL PROP. ACTS. § 1501 *et seq.*  Currently before the Court, on referral from District Judge Joseph F. Bianco, are three motions:   Defendant BANA, for itself and as successor to Countrywide, and the MERS Defendants have submitted a motion for summary judgment ("BANA Motion"), *see* Docket Entry ("DE") [50]; Defendants Ocwen and Fannie Mae have also submitted a motion for summary judgment ("Ocwen Motion"), *see* DE [57]; and Plaintiffs have moved for leave to file an amended complaint and cross-moved for summary judgment.  *See* DE [45].  For the reasons set forth herein, it is recommended that Defendants' motions be granted, that Plaintiffs' motions be denied, and that the matter be dismissed.

## I.  BACKGROUND

### A.  Relevant Facts

The facts are drawn from the Complaint and from the Rule 56.1 Statements and Counter-statements submitted by the parties.  *See* BANA Motion Defendants' Statement Pursuant to Local Civil Rule 56.1 ("BANA R.56.1 Stmt"), DE [55]; Plaintiffs' Genuine Dispute of BANA Statement of Material Fact ("Pls R.56.1 Counter-stmt/BANA"), DE [75] at 45-50; Ocwen Motion Defendants' Amended Statement of Material Facts ("Ocwen R.56.1 Stmt"), DE [67]; Plaintiffs' Dispute of Defendant Ocwens' Statement ("Pls R.56.1 Counter-stmt/Ocwen"), DE [75] at 59-61; Pls Statement Pursuant to Rule 56.1 ("Pls R.56.1 Stmt"), DE [75] at 18-35; BANA's Counter-Statement ("BANA R.56.1 Counter-Stmt"), DE [79]; and Ocwen's Response to Plaintiffs' 56.1 Statement ("Ocwen R.56.1 Counter-Stmt"), DE [81-1].  Familiarity with the case is presumed.  The facts set forth herein are germane to the sole remaining cause of action.[1]

---

[1] A recitation of the allegations pertaining to claims that were previously dismissed can be found in Judge Bianco's prior order.  *Knox v. Countrywide Bank,* 4 F. Supp.3d 499 (E.D.N.Y. 2014).

1.  The Loan Transactions

*a. The 2004 Loan*

In 2004, Plaintiffs obtained a mortgage loan relating to the Property from Countrywide for $329,000 ("the 2004 Loan").  BANA R.56.1 Stmt ¶ 1.  In conjunction with the mortgage, Plaintiffs executed a Note dated April 23, 2004 in favor of Countrywide.  Affidavit of Tiffany Barnfield ("Barnfield Aff."), Ex. 1, Fixed/Adjustable Rate Note ("2004 Note"), DE [50-1].  The 2004 Loan was secured by a mortgage encumbering the Property that identifies Countrywide Home Loans, Inc.[2] as the Lender, the Knoxes as the Borrowers, and further identifies MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."  Barnfield Aff. ¶ 5, Ex. 2 ("2004 Mortgage").  The 2004 Mortgage states that "**FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**"  *Id.* (emphasis in original).  The 2004 Mortgage is also dated April 23, 2004, and was recorded with the Nassau County Clerk on May 27, 2004.

Plaintiffs claim that the 2004 Note was sold to a secondary investor on April 29, 2004, "just days after it was created."  Plaintiffs' Conclusion in Support of Plaintiffs' Cross Motion for Summary Judgment ("Pls' Concl. in Support"), at 3, DE [75], pp. 62-67.  As evidence in support of this claim, Plaintiffs cite copies of payment and transaction histories for the 2004 Loan, *see* Affidavit of Nicole Tollefson ("Tollefson Aff."), Ex. K at 1, DE [60].   Although Plaintiffs do not explain the import of this document, the Court notes that the fifth line from the bottom on the first page of the exhibit reads: "APP/FND/PYOFF/Sale Dt 4/29/2004."  The third line from the bottom reads "Sec Mkt #: 000779046 Issue Dt:  5/01/2004."  The following pages of this exhibit

---

[2] The parties treat Countrywide Home Loans, Inc. as synonymous with Countrywide Bank.  *See, e.g.,* Affirmation of Philip L. Knox, Jr. ("Knox Aff.") DE [75] (caption reads in part "Countrywide Bank FSB/Countrywide Home Loans Inc. their Successors and Assigns"); BANA R.56.1 Stmt ¶ 1 (noting that Plaintiffs obtained the 2004 Loan "from defendant Countrywide Home Loans, Inc.").

document loan payments made by Plaintiffs to Countrywide during calendar years 2004 through 2008.  Defendants acknowledge that at some unidentified time, Defendant Fannie Mae became beneficial owner of the 2004 Note, but point out that Countrywide still held the 2004 Note.  *See* Ocwen Motion, Amended Memorandum of Law in Support, DE [66] at 10 (stating that "Fannie Mae was the owner of the 2004 Loan from origination until the consolidation in 2008. Countrywide Home Loans, Inc. was the record lender listed in the 2004 Mortgage and Note. Countrywide was the holder of the 2004 and 2008 Notes at the time of the consolidation in 2008").  Defendants have not, however, provided any admissible evidence regarding Fannie Mae's role in this matter.  There is no dispute among the Defendants regarding whether Countrywide was the holder of the 2004 Note.

     *b. The 2008 Loan and Consolidation Agreement*

On February 12, 2008, Plaintiff Diana Knox closed on a second loan for an additional $275,970.04 ("2008 Loan") and a second Note was executed in favor of Countrywide.  Barnfield Aff., Ex. 5, Interest only Adjustable Rate Note ("2008 Note").  Plaintiffs state that Countrywide would not approve a loan to Philip Knox because of his credit score, but offered the loan to Diana Knox as the sole borrower.  *See, e.g.,* Affirmation of Philip L. Knox, Jr. ("Knox Aff.") ¶ 7, DE [75]; Compl. ¶ 7.   The 2008 Loan was secured by another mortgage encumbering the Property.  *Id.* ("2008 Mortgage").  Countrywide was the lender, and MERS was again designated as Countrywide's nominee.  The 2008 Mortgage included the same language as the 2004 Mortgage regarding the designation of MERS as the mortgagee of record, and was recorded with the Nassau County Clerk on May 7, 2008.

On February 12, 2008, after executing the 2008 Loan documentation, both Plaintiffs executed a Consolidation, Extension, and Modification Agreement ("CEMA").  The CEMA

4

consolidated the outstanding amount of the 2004 Loan with the 2008 Loan, resulting in a single lien in favor of Countrywide in the amount of $585,000 (the "Consolidated Loan"). Barnfield Aff., Ex. 6, CEMA. The CEMA was signed by Plaintiffs as Borrowers, and by Daniel Surber, Branch Manager, on behalf of both Countrywide as Lender and MERS as Mortgagee. Plaintiffs admit that they executed the CEMA, but dispute that agreement's legality, claiming that Countrywide did not have ownership of the 2004 Note at the time the CEMA was executed. Pls R.56.1 Counter-stmt/BANA, ¶ 7. BANA claims that Countrywide, through its custodian, had possession of the 2004 Note on February 12, 2008, but indicates that the 2004 Note was subsequently lost. Barnfield Aff. ¶ 7. BANA provided an Affidavit of Lost Note dated December 20, 2012 stating that the 2004 Note was lost, but failing to indicate when the loss was discovered. Barnfield Aff., Ex. 4.

As part of the CEMA transaction, Diana Knox executed a Consolidated Adjustable Note that explicitly states that it "amends and restates in their entirety and is given in substitution for, the Notes described in Exhibit A" of the CEMA, which are the 2004 and 2008 Notes. Barnfield Aff. Ex. 7, Consolidated Adjustable Note ("Consolidated Note"). As collateral security for the consolidated debt, both Plaintiffs executed a Consolidated Mortgage in the amount of $585,000 on which both Diana and Philip Knox are identified as Borrowers, Countrywide is the Lender, and MERS is the Mortgagee of record. *Id.* ("Consolidated Mortgage"). The Consolidated Mortgage was recorded with the Nassau County Clerk on May 7, 2008. Plaintiffs are currently in default of the Consolidated Loan. *See* Tollefson Aff. ¶ 16; Barnfield Aff. ¶ 21. There is no evidence, however, that a foreclosure action has been commenced.

2.  Post-Consolidation Facts

Effective April 27, 2009, Countrywide converted to a national banking association and immediately thereafter, merged with and into BANA.  Barnfield Aff. ¶ 9.   Regarding the entities providing loan servicing, Countrywide Home Loans Servicing LP changed its name to BAC Home Loans Servicing LP on April 27, 2009, and the latter subsequently merged into BANA effective July 1, 2011.  Barnfield Aff. ¶¶ 12-13.  After this merger, "any business records held by BAC Home Loans Servicing, LP were effectively held by BANA and BANA has relied on them in its day to day operations."  *Id.* ¶ 13.  As the result of an agreement between BANA and Defendant Ocwen dated May 14, 2012, servicing responsibilities for the Consolidated Mortgage Loan were transferred to Ocwen as subservicer as of August 31, 2012.  Tollefson Aff.  ¶ 12, DE [60]; Barnfield Aff. ¶ 15.  Ocwen is responsible for servicing the loan as attorney-in-fact for BANA.  Tollefson Aff. ¶ 2.  It does not, however, have any direct interest in the Property.

By Assignment dated June 5, 2012, MERS, acting as nominee for Countrywide, assigned the 2004 Mortgage, the 2008 Mortgage, and the Consolidated Mortgage to BANA as successor by merger to Countrywide.  Barnfield Aff., Ex. 3; Tollefson Aff. Ex. I ("2012 Assignment").  Plaintiffs argue that this assignment was defective and invalid as MERS "had no authority to transfer any interests in the notes."  Pls R.56.1 Counter-stmt/BANA, ¶ 4.  The MERS Defendants currently have no interest in the Property.

As to the 2004 Note, BANA has provided an Affidavit of Lost Note dated December 20, 2012 indicating that "after due diligence, possession of the note cannot reasonably be obtained because the Note has been lost due to destruction, theft, or otherwise" and that based on a review of its business record, the loss of possession "is not the result of a rightful transfer or a lawful seizure of the Note."   Barnfield Aff., Ex. 3, Affidavit of Lost Note ("Lost Note Aff.") at ¶¶ 6-7.

6

Plaintiffs further argue that the 2004 Loan was satisfied, relying in part upon a letter dated February 25, 2011 from a litigation specialist with Bank of America advising that the 2004 Loan "was paid off on February 21, 2008."  Knox Aff. ¶ 58, Ex. 15.  A second letter dated May 23, 2011 elaborated, stating that the 2004 Loan "was paid off on February 21, 2008 when you executed the [Consolidated] Loan pursuant to a refinance.  In other words, the proceeds from the [Consolidated] Loan satisfied the [2004] Closed Loan on February 21, 2008."  Knox Aff. ¶ 63, Ex. 19.

### 3.  Plaintiffs' Bankruptcy Filing

On January 11, 2010, Plaintiffs filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of New York.  *See* Case No. 8-10-70181-DTE.  In their filing, Plaintiffs, on Schedule D – Creditors Holding Secured Claims form, listed Bank of America as a secured creditor holding a "Home Mortgage" on the property securing a lien in the amount of $585,000.  Berger Aff. Ex. 9.  The Schedule A – Real Property form also lists the Property as a secured claim in the amount of $585,000.  Req. for Judicial Notice, Ex. 1A. DE [64].  Plaintiffs' Chapter 7 Individual Debtor's Statement of Intention indicates their intent to retain the Property secured by the Mortgage Loan, claim it as exempt, and reaffirm the debt for the Property.[3]  Req. for Judicial Notice, Ex. 1D, DE [64].  An Order of Final Decree was issued on April 23, 2010 granting Plaintiffs a discharge.  Berger Aff., Ex. 10.

## B. Procedural History

Plaintiffs commenced this action in the Supreme Court of the State of New York, Nassau County, by service of the Summons and Complaint on or about June 7, 2013.  Defendants timely removed it to the United States District Court, and soon thereafter moved to dismiss.

---

[3] It does not appear, however, that a formal reaffirmation agreement was entered into or approved by the Bankruptcy Court as required under 11 U.S.C. § 524(c).

By Order dated March 12, 2014, Judge Bianco decided the Defendants' motions to dismiss, rejecting Plaintiffs' fraud claims based on false information in the application for the 2008 Loan in part as barred by the doctrine of *in pari delicto* as Judge Bianco found that Plaintiffs were admitted wrongdoers and shared culpability.  The Court further rejected the argument that "splitting" the mortgage from the note rendered one or both invalid, and found that, with the exception of one claim, "the remaining claims are time-barred, fail to allege sufficient facts, or are not cognizable as affirmative claims for relief."  *Knox v. Countrywide Bank,* 4 F. Supp. 3d 499, 504 (E.D.N.Y. 2014).

Judge Bianco identified the sole remaining cause of action as a claim pursuant to RPAPL Article 15 and specifically denied leave to amend as to the dismissed causes of action, finding that amendment would be futile.  *Id.* at 514.  Judge Bianco further denied Plaintiffs' motion to remand, noting that subject matter jurisdiction is based on diversity of citizenship.  *Id.* at 504, n.2.  In addition, he noted that it appeared that plaintiffs "did not intend to state any federal claims," and that the complaint does not allege a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*  *Knox,* 4 F. Supp. 3d at 512, n.9.

In November and December 2014, Judge Bianco set briefing schedules for two motions for summary judgment, one from the BANA and MERS Defendants, and a separate motion by Defendants Ocwen and Fannie Mae.  *See* Elec. Order of 11/25/14; Order of 12/1/14, DE [42].  After Plaintiffs again moved for leave to amend the complaint, DE [45], Judge Bianco determined that the motion to amend would be considered in conjunction with the motions for

summary judgment.  *See* E-Order of 12/15/14.  By Order dated April 8, 2015, Judge Bianco referred all three motions to this Court for Report and Recommendation.  *See* DE [73].[4]

## II.  DISCUSSION

### A.  Plaintiffs' Motion to Amend

#### 1.  Rule 15 Standards

Plaintiffs have moved to amend their complaint.  Rule 15 of the Federal Rules of Civil Procedure provides, in pertinent part, that "a party may amend its pleading . . . [with] the court's leave," and that the court should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In making its determination, the court considers factors such as undue delay, prejudice to the defendants, and futility of the proposed amendments.  *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998); *Harrison v. NBD, Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998).  Although amendments are generally favored because "they tend to facilitate a proper decision on the merits," *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998) (citation omitted), ultimately, "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co.v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 182).

Amendment should only be denied for good reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

---

[4] A status conference before this Court was scheduled for December 14, 2014 to determine, *inter alia,* whether additional discovery was required prior to the parties' submission of summary judgment motions. *See* DE [43].  The parties jointly sought an adjournment of that proceeding, consenting to its rescheduling after adjudication of the summary judgment motions.  *See* DE [44], [71], [83].  The conference was rescheduled by this Court twice, *see* Elec. Orders of 12/15/14 & 3/3/15, but was ultimately adjourned without date.  *See* Elec. Order of 5/18/15.

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman,* 371 U.S. at 182).   An amendment is futile if the claim would be unable to withstand a Rule 12(b)(6) motion to dismiss.   *See Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243, 258 (2d Cir. 2002).   Indeed, "[t]he standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b)(6) motion to dismiss --namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." *Crippen v. Town of Hempstead,* No. 07-CV-3478, 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009); *see also Rivers v. New York City Hous. Auth.,* No. CV 2011-5065, 2014 WL 1311557, at *4 (E.D.N.Y. Mar. 31, 2014) (noting that "[t]he legal standard for analyzing a motion to amend for futility is thus identical to the standard for a 12(b)(6) motion to dismiss, which is well established").

   2. Plaintiffs' proposed amended complaint

   Plaintiffs' motion to amend their complaint should be denied because any such amendment would be futile.   To the extent that Plaintiffs' Amended Complaint contains new allegations intended to bolster Plaintiffs' fraud claims, Judge Bianco dismissed those claims and explicitly denied leave to amend, and thus amendment is barred by the doctrine of law of the case, "which holds that a decision on an issue of law made at one stage of a case should continue to govern the same issue in subsequent stages of the same litigation." *Katz v. Mogus,* No. 07-CV-8314, 2008 WL 2605072, at *2 (S.D.N.Y. July 1, 2008) (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815-16, 108 S. Ct. 2166 (1988)).   Although application of the doctrine is discretionary and a court has the power to revisit its prior decisions, "as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial

10

decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson,* 486 U.S. at 817, 108 S. Ct. at 2178 (quoting *Arizona v. California,* 460 U.S. 605, 618 n.8, 103 S. Ct. 1382 (1983)).   This Court discerns no reason to depart from the law of the case as set forth in Judge Bianco's decision on Defendants' motions to dismiss.   Accordingly, the Court considers whether the Amended Complaint contains allegations that pertain to the remaining cause of action to quiet title or raise any new claim not previously adjudicated.

Plaintiffs attempt to assert new RPAPL Article 15 claims directed specifically at the 2004 and 2008 Notes and Mortgages.   They claim that the 2004 Mortgage debt "was paid off and satisfied on February 21, 2008," *id.* ¶ 39, and thus argue that the Consolidated Loan must be reduced by the "paid off" amount of approximately $309,000.   Plaintiffs' position is partially based upon their seeming misinterpretation of letters from BANA's litigation counsel in 2011 that stated that the 2004 Loan had been "closed" and "paid off" effective February 21, 2008. But as one of the letters from BANA clearly states, the 2004 Loan was "paid off" from the proceeds of the Consolidated Loan after execution of the CEMA.   *See* Knox Aff., Ex. 19. Consistent with the express terms of the CEMA, the 2004 Loan was consolidated with the 2008 Loan to form the Consolidated Loan.   To the extent the 2004 Loan was "satisfied," the debt it represented was simply shifted into a new loan.   *See Benson v. Deutsche Bank Nat'l Trust, Inc.,* 109 A.D.3d 495, 497-98, 970 N.Y.S.2d 794 (2d Dep't 2013) (noting that "an assignment of a loan obligation means that the obligation has been transferred, not paid in full and, thus, contrary to the plaintiff's allegation, does not render the obligation satisfied and discharged").

Plaintiffs further assert that the 2004 and 2008 Mortgages remain improperly recorded and unlawfully cloud their title.   Specifically, they argue that the 2008 Note is unenforceable, null and void, and became non-existent upon execution of the CEMA.   *See* Am. Compl., p. 19.

11

Under New York law, however, where outstanding balances of a first mortgage are increased by borrowing a second mortgage loan, "and CEMAs are executed to consolidate the mortgages into single liens, the first notes and mortgages still exist and may be assigned to other lenders." *Benson,* 109 A.D.3d at 497-98, 970 N.Y.S.2d at 797.   Accordingly, as Plaintiffs' allegations concerning additional claims under RPAPL Article 15 do not state a claim upon which relief can be granted, amendment would be futile, and thus Plaintiffs' motion to amend to add such claims should be denied.

In addition to the RPAPL Article 15 claims, the proposed amended complaint contains new allegations regarding Countrywide's alleged failure to provide Plaintiffs with a Housing and Urban Development Settlement Statement ("HUD-1 Statement") prior to the closing held on February 12, 2008.  *See* Am. Compl. ¶¶ 24-32.  This claim fails for two reasons.  Initially, RESPA § 2603(b) requires a lender to provide a borrower with, *inter alia,* a HUD-1 Statement. 12 U.S.C. § 2603(b).  Accordingly, the Court construes these allegations as a belated attempt to assert a federal claim under RESPA.[5]  Violations of § 2603, however, do not provide a private cause of action.  *See* 12 U.S.C. § 2614; *Gorbaty v. Wells Fargo Bank., N.A.,* Nos. 10-CV-3291, 10-CV-3354, 2012 WL 1372260, at *3 (E.D.N.Y. Apr. 18, 2012).  Accordingly, even if Plaintiffs' claim that they were not provided with the HUD-1 Statement until after the closing of the loan and that they never signed it is accurate, the claim still fails as a matter of law.

Moreover, claims under RESPA are subject to a one year statute of limitations.  *See, e.g., Bosch v. Lamattina,* No. 08-CV-238, 2008 WL 4820247, at *2 (E.D.N.Y. Nov. 4, 2008).  As the

---

[5] To the extent Plaintiffs' Amended Complaint can be read to assert a claim under the federal Truth in Lending Act ("TILA"), Judge Bianco has previously ruled that "a TILA claim would be time-barred" as it is subject to a one-year statute of limitations.  *Knox,* 4 F. Supp. 3d at 511-12 (citing *Cardiello v. The Money Store,* 29 F. App'x 780, 781 (2d Cir. 2002) (noting one-year statute of limitations for TILA claims)) (additional citations omitted).

closing took place in February 2008, any RESPA claim would be time-barred.  For both of these reasons, an amended complaint asserting such a claim would be futile.[6]

In sum, the Amended Complaint does not assert any claims that would survive a motion to dismiss, and thus amendment would be futile.  Accordingly, it is recommended that leave to amend be denied.

## B.  Summary Judgment Standards

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). Rule 56 further provides that a party asserting that there is no genuine dispute as to a material fact must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56 (c)(1).

Once the movant has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'" but rather "'must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v.*

---

[6] Although not included in their Amended Complaint, Plaintiffs' papers in opposition to the motions for summary judgment include several paragraphs pertaining to various loan modification activities under the Home Affordable Modification Program ("HAMP") that took place in 2010 between Plaintiffs and BANA.  *See* Knox Aff., ¶¶ 27-38.  To the extent Plaintiffs are attempting to assert another federal claim, the Court notes that there is no private right of action under HAMP.  *See Dumont v. Litton Loan Serv'g, LP,* No. 12-cv-2677, 2014 WL 815244, at *8 n.13 (S.D.N.Y. Mar. 3, 2014).

*Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (internal quotation marks and citations omitted)); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" (emphasis in original)).  The opposing party cannot simply "rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 428 (2d Cir. 2001).

The Court must also construe the facts in the light most favorable to non-moving party. *See Capobianco v. City of New York,* 422 F.3d 47, 50 n.1 (2d Cir. 2005).  Plaintiffs are proceeding *pro se* and therefore their pleadings must be "liberally construed" and their submissions read to "raise the strongest arguments they suggest." *Angulo v. Nassau Cnty.,* – F. Supp. 3d –, 2015 WL 993459, at *4 (E.D.N.Y. Mar. 6, 2015) (quoting *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted)).  The mere fact that litigants are appearing *pro se*, however, does not relieve them "of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Angulo,* 2015 WL 993459, at *4 (quoting *Rodriguez v. Hahn,* 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted)).  The court must decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir. 2008).

## C.  Declaratory Judgment Pursuant to RPAPL Article 15

Applying the standards set forth above, Defendants' motions for summary judgment should be granted and Plaintiffs' motion for summary judgment should be denied.  Plaintiffs' sole remaining claim arises from RPAPL Article 15, which exists "to compel the determination of any claim adverse to that of the plaintiff which the defendant makes."  N.Y. REAL PROP. ACTS. § 1501(1).  The procedures set forth in RPAPL Article 15 have "codified the common law action to quiet title."  *W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.,* 815 F.2d 188, 196 (2d Cir. 1987).  To prevail in an action under this section, "a party must demonstrate good title itself; it may not rely on the weakness of its adversary's title." *LaSala v. Terstiege,* 276 A.D.2d 529, 530, 713 N.Y.S.2d 767,768 (2d Dep't 2000) (citations omitted).

Plaintiffs seek a judgment declaring that they are the owners of the Property free of any lien claimed by Defendants.  Under New York law, "[p]redecessors in title who claim no interest in the property are neither necessary nor proper parties to an action to quiet title."  *McGahey v. Topping,* 255 A.D.2d 562, 563, 682 N.Y.S.2d 223, 224 (2d Dep't 1998); *see also Pirrelli v. OCWEN Loan Serv'g, Inc.,* 129 A.D.3d 689, __, 2015 WL 3478144, at *4 (2d Dep't June 3, 2015) (dismissing claims against defendants' attorneys); *Barberan v. Nationpoint,* 706 F. Supp. 2d 408, 420 (S.D.N.Y. 2010) (dismissing claim against loan servicer); *Hammond v. Am. Bus. Mortg. Servs., Inc.,* No. 03 CV 5021, 2005 WL 1541043, at *1 (E.D.N.Y. June 30, 2005) (dismissing claim against former mortgagee that had transferred the property).

With the exception of BANA, the Defendants currently have no interest, adverse or otherwise, in the Property.  Ocwen is a servicer of the loan, not a lienholder; Fannie Mae's interest as owner of the 2004 Loan ended in 2008; Countrywide merged with BANA in 2009 and has no independent interest in the Property; and MERS assigned all of its interests to BANA by

15

the 2012 Assignment.   Accordingly, the presence of these Defendants is unnecessary, and it is recommended that the summary judgment motions of Defendants Countrywide, Ocwen, the MERS Defendants, and Fannie Mae be granted and that these Defendants be dismissed from the case.

Next, the Court turns to Plaintiffs' various arguments in support of their claim that Defendant BANA's interest in the Property should be extinguished.

1.  Effect of Bankruptcy Filing

Initially, Plaintiffs claim that their debts, including the Notes at the center of this case, were extinguished by the bankruptcy order issued on April 13, 2010 which granted them a discharge.   BANA R.56.1 Stmt ¶18.   Section 524(a) of the Bankruptcy Code bars "commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor."  11 U.S.C. § 524(a).  This section, however, bars only "acts or actions to collect a discharged debt 'as a personal liability.'   This provision does not prevent foreclosure of a lien on property."  *In re Wilson,* 492 B.R. 691, 696 (Bankr. S.D.N.Y. 2013). Thus, while Plaintiffs' personal obligations were discharged, "a valid mortgage lien survives the bankruptcy," *Drew v. Chase Manhattan Bank, N.A.,* 185 B.R. 139, 142 (S.D.N.Y. 1995), and this argument fails as a matter of law.

2.  Validity of Notes/CEMA

Plaintiffs next argue that Countrywide did not have standing or legal authority to transfer the 2004 Note into the Consolidated Note because it had sold the loan to Fannie Mae.  As a result, no lawful interest was transferred to BANA.  Under New York law, "[t]he holder of an instrument, whether or not he is the owner, may transfer or negotiate it and discharge it or enforce payment in his own name."  N.Y. U.C.C. § 3-301; *see Wells Fargo Bank, NA v. Ostiguy,*

127 A.D.3d 1375, __, 8 N.Y.S.3d 669, 671 (3d Dep't 2015); *Aurora Loan Servs. LLC v. Sadek*, 809 F. Supp. 2d 235, 240 (S.D.N.Y. 2011).   Further, the beneficial owner and note holder need not be the same entity.   *See, e.g.,* N.Y. U.C.C. § 3-301; *Deutsche Bank Nat. Trust Co. v. Pietranico,* 33 Misc.3d 528, 549, 928 N.Y.S.2d 818 (Suffolk Cnty. Sup. Ct. 2011) (recognizing distinction between note holder and beneficial owner), *aff'd*, 102 A.D.3d 724, 957 N.Y.S.2d 868 (2d Dep't 2013).   Applying these standards, Defendants argue that while Fannie Mae was the beneficial <u>owner</u> of the 2004 Loan, Countrywide held the 2004 Note, and as such, was free to transfer it.  The Court agrees.

Plaintiffs' arguments regarding Countrywide's inability to transfer the 2004 Note by executing the CEMA are purely conjectural and speculative.  As Judge Bianco noted in the decision on the motions to dismiss, Countrywide was the "Lender" and "Note Holder" on the Consolidated Note, the 2004 Note was listed on Exhibit A to the CEMA as subject to the consolidation, and Exhibit A further reflected that the 2004 Note was recorded in Nassau County "in favor of MERS as nominee for Countrywide Home Loans, Inc."  Based in part "on the face of the relevant documents," Judge Bianco determined that "Countrywide held the 2004 note when it executed the CEMA, and the complaint does not allege facts to suggest otherwise." *Knox,* 4 F. Supp. 3d at 509.  Indeed, Plaintiffs have not provided any evidence to dispute that Countrywide was the holder of the 2004 Note on February 12, 2008.[7]  Accordingly, the fact that Fannie Mae was the beneficial owner of the 2004 Loan did not impact Countrywide's ability, as holder of the 2004 Note, to transfer it and to execute the CEMA that consolidated the 2004 and

---

[7] Plaintiffs' documentary evidence is an unauthenticated, unsworn MERS Servicer ID Document printed from a website and dated February 9, 2011 that lists the "Investor" of the 2004 Note as "Fannie Mae."  Compl. Ex. E.  This document, which is dated almost three years after the closing of the Consolidated Loan, is not evidence that Fannie Mae held the 2004 Note.

2008 Notes.  Similarly, the fact that the 2004 Note was lost at some point as evidenced by the Lost Note Affidavit dated December 20, 2012, does not retroactively impact Countrywide's authority to execute the CEMA in 2008 as Countrywide had possession of the 2004 Note on February 12, 2008.  *See* Barnfield Aff. ¶ 7.

Plaintiffs further attack the sufficiency of the 2012 Assignment of all the mortgages to BANA, arguing that MERS did not have the capacity to execute the assignment.  This argument is untenable.  As a threshold matter, each Plaintiff was neither a party nor an intended third-party beneficiary to the 2012 Assignment between MERS and BANA and thus lacks standing to challenge the validity of the assignment.  *See, e.g., In re Holden,* 271 N.Y. 212, 218, 2 N.E.2d 631, 633-34 (1936) (noting that the assignments were valid on their face and "[n]o one could question the validity of the assignments except the assignors"); *Tamir v. Bank of New York Mellon,* No. 12-CV-4780, 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013) ("Generally speaking, a non-party to a contract lacks standing to challenge an agreement in the absence of terms demonstrating that it is a third party beneficiary"); *see also Utreras v. Aegis Funding Corp.,* No. 13-cv-00291, 2013 WL 789614, at * 2 (E.D.N.Y. Mar. 1, 2013) (noting that "if one party purported to assign the mortgage to another party, but actually failed to do so, there could be a genuine dispute between the putative assignee and assignor over the ownership of the mortgage, but Plaintiff would likely have no standing in such a dispute").

Assuming *arguendo* that Plaintiffs have standing to attack the 2012 Assignment, a challenge to the legal authority of MERS to assign the interests in the 2004 Loan, 2008 Loan and Consolidated Loan also fails.  Under the express terms of the mortgages, MERS, as Countrywide's nominee, had the right to exercise any and all rights of Countrywide.

Accordingly, MERS had authority to assign the mortgages. *See Barnett v. Countrywide Bank, FSB,* 60 F. Supp. 3d 379, 388 (E.D.N.Y. 2014).

Finally, as a practical matter, the 2012 Assignment merely served to tie up loose ends by substituting BANA as the mortgagee where BANA already owned the loans and held the notes as successor in interest to Countrywide.

In sum, Plaintiffs have failed to demonstrate any basis upon which the Court could conclude that the interests set forth by BANA and reflected in the recorded loan documents and mortgages are invalid.   Given their lack of evidence regarding whether the Property is wrongfully encumbered, there is no material issue of fact sufficient to merit a trial and the case should be dismissed. *See Jahan v. U.S. Bank N.A.,* 127 A.D.3d 926, 9 N.Y.S.3d 65 (2d Dep't 2015); *Acocella v. Bank of New York Mellon,* 127 A.D.3d 891, 9 N.Y.S.3d 67 (2d Dep't 2015); *Benson,* 109 A.D.3d at 498, 970 N.Y.S.2d at 797.   Accordingly, it is recommended that Defendant BANA's motion for summary judgment be granted and that Plaintiffs' cross-motion for summary judgment be denied.[8]

---

[8]Defendants argue that to the extent that Plaintiffs' allegations are based on allegedly fraudulent conduct by any of the Defendants, such claims should fail as Plaintiffs have ratified the various loans and mortgages by their actions such as making payments on the Consolidated Loan and listing it as a debt owed to BANA on their bankruptcy filings.  "'Ratification' results when a party to a voidable contract accepts benefits flowing from the contract, or remains silent, or acquiesces in contract for any considerable length of time after he has had the opportunity to annul or void the contract." *Prudential Ins. Co. v. BMC Indus., Inc.,* 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986).   The Court has considered Plaintiffs' arguments in favor of their claim to quiet title to the extent that they are based on the incapacity of various actors to perform various acts, such as Countrywide's alleged inability to execute the CEMA or MERS's alleged lack of authority to assign the Consolidated Mortgage.  As the Court has not considered any of Plaintiffs' arguments based on Defendants' alleged fraud on the merits, it need not determine whether Plaintiffs have ratified the various Mortgages by their conduct.

## III.  CONCLUSION

For the reasons set forth herein, the Court recommends that Plaintiffs' motion to amend and cross-motion for summary judgment be denied, that Defendants' motions for summary judgment be granted, and the case dismissed.

## IV.  OBJECTIONS

A copy of this Report and Recommendation is being sent to Defendants by electronic filing and to Plaintiffs by U.S. Mail.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service.  Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy.  *See* Fed. R. Civ. P. 6(a), 6(e), 72.  A courtesy copy of any objections filed is to be sent to the Chambers of the District Judge.  Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 474-75 (1985); *Caidor v. Onondaga Cnty.,* 517 F.3d 601, 604 (2d Cir. 2008); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.1997).

Dated: Central Islip, New York
      July 29, 2015

            s/ Steven I. Locke
           STEVEN I. LOCKE
           United States Magistrate Judge